UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE RESOURCE GROUP INTERNATIONAL LIMITED.<br><br>Petitioner,<br><br>-against-<br><br>MUHAMMAD ZIAULLAH KHAN CHISHTI<br><br>Respondent. | **PETITION TO CONFIRM ARBITRATION AWARD**<br><br>Case No.: 25-cv-1021 |

Petitioner The Resource Group International Limited ("TRG-I" or "Petitioner"), by and through its attorneys, Cleary Gottlieb Steen & Hamilton LLP, respectfully states as follows:

## NATURE OF PROCEEDINGS

1. Petitioner brings this summary proceeding pursuant to Article 75 of the New York Civil Practice Law and Rules ("CPLR") to confirm an arbitration award issued in New York City in Petitioner's favor against Respondent Muhammad Ziaullah Khan Chishti ("Mr. Chishti" or "Respondent").[1]

## THE PARTIES

2. Petitioner TRG-I is a holding company that specializes in investments in software, information services, and technology-enabled service companies. At all times material hereto, Petitioner TRG-I was and still is a corporation incorporated under the laws of Bermuda, and has its principal place of business in Hamilton, Bermuda. Accordingly, pursuant to 28 U.S.C. § 1332(c)(1), Petitioner TRG-I is a citizen of Bermuda for purposes of 28 U.S.C. § 1332.

---

[1] The same result would be warranted under Chapter 1 of the Federal Arbitration Act, 9 U.S.C. § 9, which is substantially identical.

3. Upon information and belief, Mr. Chishti is a dual citizen of the United States and Pakistan who is currently domiciled in Puerto Rico. Accordingly, Mr. Chishti is a citizen of Puerto Rico for purposes of 28 U.S.C. § 1332. Mr. Chishti is a founder and former Chairman and Director of TRG-I, the former CEO and Director of TRG-I affiliate TRG Pakistan Limited ("TRG-P"), and the former Chairman and Chief Executive Officer of Afiniti Limited ("Afiniti"), one of TRG-I's portfolio companies.

**JURISDICTION AND VENUE**

4. This is an action for confirmation of an arbitration award pursuant to Article 75. *See* N.Y. C.P.L.R. §§ 7502, 7510. *See also Res. Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 113 (2d Cir. 2024) (holding "the parties [to a separate arbitration pursuant to the same arbitration agreement] intended and expressly elected New York state law to govern arbitrations between them," and "that the arbitration proceedings are therefore governed by New York state law").

5. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds US $75,000.[2] Specifically, Petitioner is the citizen of a foreign state, while Respondent is a citizen of Puerto Rico. *See* 28 U.S.C. § 1332(a)(3) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens

---

[2] Although, as further described below, TRG-I sought declaratory and injunctive relief in the arbitration, the relief granted in the Partial Final Award implicates an amount well in advance of $75,000. For example, the Partial Final Award prohibits Mr. Chishti from Transferring (as defined in the SPA and below) over 87,000,000 ordinary shares in TRG-P that Mr. Chishti owns, which based on the price per share as of February 4, 2025, are valued at approximately $20.9 million. *See* PAKISTAN STOCK EXCHANGE, *TRG Pakistan Limited* (last visited Feb. 4, 2025), https://dps.psx.com.pk/company/TRG. In addition, as further described below, because Claimant has prevailed on its affirmative claims and Respondent has not, Claimant is entitled to its attorneys' fees and costs incurred over the two-year arbitration proceeding, which have not yet been quantified but certainly exceed $75,000.

of different States and in which citizens or subjects of a foreign state are additional parties.").[3]

6. This Court has personal jurisdiction over Respondent in this action because Respondent consented under the Preferred Stock Purchase Agreement (the "SPA") to which Respondent, Petitioner and others are parties to arbitration (including the JAMS arbitration at issue in this case) seated in this State and governed by New York law.[4]

7. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because the arbitral seat specified in the SPA is located in New York, New York, which is within the district.

**FACTUAL BACKGROUND**

8. On October 4, 2005, TRG-I, Mr. Chishti, certain entities affiliated with American International Group, Inc. ("AIG") and others entered into the SPA, pursuant to which AIG made a large investment in TRG-I. The SPA placed limitations on Respondent's ability to "Transfer" (a defined term in the SPA) securities of TRG-I and TRG-P. Specifically, pursuant to Section 8.6 of the SPA, Mr. Chishti is prohibited from effecting any Transfer, which is defined as "any sale, assignment, transfer, pledge, hypothecation, give away, or any other disposition of or encumbrance upon, whether voluntarily or by operation of law, whether for consideration or for no consideration (but not including a conversion or exchange of Preferred Shares into Conversion Shares or Parent Shares, as applicable)," of securities in either TRG-I or TRG-P absent prior written consent of AIG.[5]

9. The SPA provides that "[a]ll disputes and controversies arising under or in connection with this Agreement shall be settled by arbitration conducted in accordance with the

---

[3] Pursuant to 28 U.S.C. § 1332(e), Washington, D.C. and Puerto Rico are considered "States" for purposes of 28 U.S.C. § 1332(a).

[4] The SPA is attached as Exhibit 2 to this Petition.

[5] SPA (Ex. 2) §§ 1.1, 8.6.

arbitration procedures described" therein.[6] The SPA further provides that "[e]xcept as otherwise provided in the JAMS' Comprehensive Arbitration Rules and Procedures as in effect from time to time (the 'Rules'), the arbitration procedures described in this Section 10.16 and any Final Arbitration Award (as defined below) [*i.e.*, the "the final result, determination, finding, judgment or award determined by the arbitrator"] shall be governed by, and shall be enforceable pursuant to, the Uniform Arbitration Act as in effect in the State of New York from time to time."[7] As noted above, in connection with a separate arbitration brought by Respondent purportedly pursuant to the SPA, the U.S. Court of Appeals for the Second Circuit held on the basis of this language that "the parties [to the SPA] intended and expressly elected New York state law to govern arbitrations between them." *Res. Grp. Int'l Ltd.*, 91 F.4th at 113 ("the arbitration proceedings are therefore governed by New York state law").

10. The SPA further provides that an "[a]rbitral proceeding initiated hereunder shall take place in New York, NY or another place agreeable to the parties to the dispute, before a single arbitrator who is agreeable to such parties."[8]

11. The SPA provides that "[a]ny Final Arbitration Award shall be final and binding upon each party to this Agreement, and there shall be no appeal from or reexamination of any Final Arbitration Award, except in the case of fraud or perjury or misconduct by the arbitrator prejudicing the rights of any party to the dispute or to correct manifest clerical errors," and that "[a] Final Arbitration Award may be enforced in any state or federal court having jurisdiction over the subject matter of the dispute."[9]

12. Following the SPA's execution, Mr. Chishti breached the restrictions that he had

---

6 SPA (Ex. 2) § 10.16.
7 SPA (Ex. 2) § 10.16.
8 SPA (Ex. 2) § 10.16.
9 SPA (Ex. 2) § 10.16.

agreed to on his Transfer of TRG-I and TRG-P securities by, *inter alia*, selling such securities and pledging them as collateral for large loan facilities.

13. On November 16, 2021, Tatiana Spottiswoode, a former employee of Afiniti, of which Mr. Chishti was CEO at the time, publicly testified before the Committee on the Judiciary of the U.S. House of Representatives (the "House Committee") that over a period of "18 months," Mr. Chishti "oscillated between pressuring me for sex and punishing me," and that at one point he "beat me while having sex with me," resulting in "bruises around my neck that looked like I had been strangled, a large bump on my head, a black eye."[10]

14. Shortly after Ms. Spottiswoode testified, global media outlets widely disseminated her testimony and photos, portraying Mr. Chishti (in his words) as a "rapist" and a "pedophile."[11] TRG-P's stock plummeted in light of Ms. Spottiswoode's allegations against Mr. Chishti, who was at that time the CEO and Director of TRG-P (in addition to being Chairman and Director of TRG-I). TRG-I's portfolio companies also faced immense pressure from its customers to sever their relationships with Mr. Chishti.

15. As a result, on November 18, 2021, two days after Ms. Spottiswoode's testimony before the House Committee, Mr. Chishti resigned from his role as Afiniti's Chairman and CEO. Ten days later, on November 28, 2021, Mr. Chishti also resigned from his roles as CEO and Director of TRG-P and as Chairman and Director of TRG-I.

16. On January 12, 2023, TRG-I filed a Demand for Arbitration with JAMS, alleging that Mr. Chishti had breached the SPA by selling and pledging his TRG-I and TRG-P securities

---

[10] Testimony of Tatiana Spottiswoode, House Committee on the Judiciary, dated November 16, 2021, at 1, 3, https://docs.house.gov/meetings/JU/JU00/20211116/114227/HHRG-117-JU00-Wstate-SpottiswoodeT-20211116.pdf.

[11] Complaint ¶¶ 1, 17 *Chishti et al. v. Spottiswoode et al.*, No. 1:22-cv-03490 (D.D.C. Nov. 13, 2022) (ECF No. 1).

without seeking or obtaining the requisite consent of AIG (the "Demand").[12] In the arbitration, TRG-I sought, *inter alia*, a declaration from the tribunal that Mr. Chishti had breached the SPA and a permanent injunction against Mr. Chishti selling or pledging (or Transferring in any other way) any TRG-I or TRG-P securities owned (including beneficially) by him. On January 26, 2023, Mr. Chishti filed a Response. Jurisdiction was never contested.

17. Pursuant to the SPA, the parties and JAMS convened a single-member Tribunal consisting of Michael D. Young, an experienced arbitrator.

18. Over the course of the next two years, the parties engaged in fact and expert discovery, as well as motion practice on various issues. Additionally, the claims in the Demand were amended and clarified, and Mr. Chishti received leave to file a counterclaim (the "Counterclaim").

19. Following an evidentiary hearing in New York, New York from September 9 – 13, 2024, the submission of Post-Hearing Memorials, and closing arguments on November 13, 2024, the Tribunal issued an Interim Award on January 27, 2025, which found in favor of TRG-I, as Claimant.

20. On February 4, 2025, the Tribunal corrected certain non-substantive errors in the Interim Award and issued a Partial Final Award, which "wholly replace[d] and render[ed] ineffectual the Interim Award. " Partial Final Award (Ex. 1) at 7. A true and correct copy of which is attached hereto as Exhibit 1.

21. Among other things, the Partial Final Award held that Section 8.6(a) of the SPA

[12] In 2005, multiple investment funds affiliated with AIG invested millions of dollars in TRG-I. The GEM II Fund is the largest holder of TRG-I shares among the AIG Funds. In or around 2008, management of the GEM II Fund was transferred from AIG to PineBridge Investments, a private equity company in New York, who is AIG's successor-in interest under the Agreement. As part of these transactions, the GEM II Fund was also formally renamed to "PineBridge Global Emerging Markets Fund II, L.P."

unambiguously prohibits Mr. Chishti from Transferring any TRG-I or TRG-P securities without prior written consent from AIG, and that Mr. Chishti's prior unauthorized Transfers of TRG-I and TRG-P securities breached the SPA. Partial Final Award (Ex. 1) at 59. The Tribunal also granted a permanent injunction against Mr. Chishti barring him from effecting any future Transfers of his TRG-I and TRG-P shares without prior written consent from AIG, and ordered Mr. Chishti to perform his obligations under the SPA by immediately releasing all existing pledges of his TRG-I and/or TRG-P securities, following the lifting of a preliminary injunction in aid of arbitration from a Pakistan court. Partial Final Award (Ex. 1) at 60. The Tribunal also held that, notwithstanding Mr. Chishti's breaches of the SPA but as a matter of equitable enforcement, the sale of Mr. Chishti's currently-owned shares in the TRG-P that were purchased by him during the period of October 4, 2005 through October 10, 2022 (the "Carve-Out Period") were excluded from the injunction. Partial Final Award (Ex. 1) at 56-57.[13]

22. The Partial Final Award also denied Mr. Chishti's Counterclaim, and found that "because [TRG-I] has prevailed on its affirmative claims and [Mr. Chishti] has not," TRG-I "is the prevailing party in this proceeding and therefore entitled to a further award" of attorneys' fees and costs pursuant to the arbitration agreement in Section 10.16 of the SPA. Partial Final Award (Ex. 1) at 58. The Tribunal set a briefing schedule for the determination of such attorney's fees and costs. Partial Final Award (Ex. 1) at 58-59.

23. Based on the foregoing, the Partial Final Award fully resolved all merits issues in the arbitration. *See* Partial Final Award (Ex. 1) at 58 ("Based upon the Tribunal's analysis and

---

[13] In reaching this conclusion, the Tribunal reasoned that because Mr. Chishti had purchased and sold TRG-P shares during the Carve-Out Period and TRG-I appeared to be aware of such transactions, Mr. Chishti should not be enjoined from selling such TRG-P shares that he currently owns and were purchased during the Carve-Out Period, since he "might reasonably have expected to be able to freely sell" these TRG-P shares. Partial Final Award (Ex. 1) at 57. While TRG-I disagrees with this conclusion, this carve-out has no substantive effect because Mr. Chishti does not currently own any TRG-P shares that he purchased during the Carve-Out Period. To the contrary, all of Mr. Chishti's 87,915,789 ordinary shares in TRG-P currently owned by Respondent were purchased in 2024.

conclusions herein, the only remaining issue is a determination of the amount that shall be awarded pursuant to Section 10.16 of the SPA . . .").

24. Accordingly, TRG-I brings this Petition to confirm the Partial Final Award and enter judgment upon it.

## FIRST CAUSE OF ACTION (CONFIRMATION)

25. TRG-I repeats and realleges paragraphs 1 through 24 above, as if fully set forth here.

26. CPLR § 7510 provides that "[t]he court shall confirm an award upon application of a party made within one year after its delivery to them, unless the award is vacated or modified upon a ground specified in section seventy-five hundred eleven of this article." N.Y. C.P.L.R. § 7510.

27. TRG-I has brought this action within one year of the delivery of the Partial Final Award on February 4, 2025.

28. The Partial Final Award has not been vacated or modified pursuant to CPLR § 7511. There is no pending application to vacate or modify the Partial Final Award, nor is there any basis to vacate, modify, or otherwise refuse to confirm this Partial Final Award pursuant to CPLR § 7511.

29. Accordingly, the Partial Final Award must be confirmed as a valid and enforceable arbitration award pursuant to CPLR § 7510.

## PRAYER FOR RELIEF

**WHEREFORE**, TRG-I respectfully requests that this Court:

1. enter an Order pursuant to CPLR § 7510 confirming the Partial Final Award;
2. enter a judgment in TRG-I's favor and in conformity with the Partial Final Award

pursuant to CPLR § 7514; and

3. any other relief that the Court may deem just, proper, necessary and in conformity with the Partial Final Award.

Dated: New York, New York
February 5, 2025

Respectfully submitted,

CLEARY GOTTLIEB STEEN AND HAMILTON LLP

Jeffrey A. Rosenthal
Lisa Vicens
Mark E. McDonald
Charity E. Lee
Katie L. Gonzalez

One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000
jrosenthal@cgsh.com
evicens@cgsh.com
memcdonald@cgsh.com
CharityLee@cgsh.com
kgonzalez@cgsh.com

*Attorneys for Petitioner TRG-I*