UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------
THE RESOURCE GROUP INTERNATIONAL
LIMITED,

       Petitioner,

  -v-

MUHAMMAD ZIAULLAH KHAN CHISHTI,

       Respondent.
---------------------------------------

25-cv-1021 (JSR)

OPINION & ORDER

JED S. RAKOFF, U.S.D.J.:

    Before the Court are two petitions. One is the petition of The Resource Group International Limited ("TRG-I") to confirm the Final Award that was entered in the arbitration underlying this action. See ECF No. 1. The other is the cross-petition of respondent Muhammad Ziaullah Khan Chishti to partially confirm and otherwise vacate that award. See ECF No. 25.

    For the reasons that follow, TRG-I's petition is granted; Chishti's cross-petition is denied to the extent that it seeks vacatur of the Final Award; and Chishti's cross-petition is granted to the extent that it seeks partial confirmation of the Final Award.

I. Background

    The parties' petitions arise out of a dispute concerning a provision in a Preferred Stock Purchase Agreement ("SPA") into which TRG-I, Chishti, and other parties entered in 2005. See Ex. GG to ECF No. 36 ("Final Award") at 1-2. On January 12, 2023, TRG-I initiated an arbitration proceeding against Chishti, asserting that Chishti had

1

repeatedly violated the SPA's restrictions on his ability to transfer shares of TRG-I and its parent company, TRG Pakistan Limited ("TRG-P"). Id. at 3. On April 22, 2025, the arbitrator issued the Final Award. See id. at 72. Among other things, the arbitrator found that Chishti violated the SPA; granted declaratory and permanent injunctive relief in favor of TRG-I and against Chishti; denied TRG-I's request for injunctive relief against Chishti's spouse, Sarah Pobereskin; denied Chishti's counterclaim for declaratory and other relief against TRG-I; and awarded TRG-I attorneys' fees and costs in the amount of $9,053,606.34. Id. at 70-72.[1]

Both TRG-I and TRG-P were founded by Chishti in 2002. Id. at 1. TRG-I is a privately held Bermudian company, and TRG-P is domiciled in Pakistan and listed on the Pakistan Stock Exchange. Id. In 2005, in connection with a substantial investment that financial institution AIG made in TRG-I, AIG, TRG-I, Chishti, and certain other individuals entered into the SPA. See id. at 1-2. As relevant here, Section 8.6 of the SPA contained certain "Restrictions on Transfer" limiting certain parties' ability to dispose of their TRG-P and TRG-I shares.

---

[1] The Final Award followed the arbitrator's issuance of a "Partial Final Award" on February 4, 2025. See Ex. 15 to ECF No. 14. On February 11, 2025, TRG-I moved, by a proposed order to show cause, for a preliminary injunction based on the Partial Final Award. See ECF No. 13. On February 27, 2025, while TRG-I's preliminary injunction motion was pending, the arbitrator issued an order clarifying a disputed provision of the Partial Final Award. See Ex. 1 to ECF No. 21. On March 11, 2025, the Court adopted as its own preliminary injunction the injunction issued by the arbitrator in the "Partial Final Award," as clarified by the arbitrator's order of February 27, 2025, and entered preliminary injunctive relief. See ECF No. 28.

See id.; see also id. at 9-12 (setting forth the SPA's relevant provisions). TRG-I commenced arbitration against Chishti after determining that he had allegedly sold certain securities covered by the Restrictions on Transfer and that he had pledged such securities as collateral for large loan facilities. See id. at 2-3. The arbitration was conducted by a single-member arbitral tribunal and included "extensive and contentious proceedings" that unfolded over the course of almost two years. See id. at 4-9, 72; see also id. App'x A (setting forth detailed procedural history).

The arbitrator concluded that the disputed provisions of the SPA prohibit Chishti from transferring any TRG-I or TRG-P securities without AIG's prior written consent. See id. at 54-58. In reaching this conclusion, the arbitrator adopted TRG-I's interpretation of the Restrictions on Transfer and rejected Chishti's interpretation of those restrictions. See id. at 17-28. Accordingly, the arbitrator entered a permanent injunction barring Chishti from effecting any further transfers of his TRG-I and TRG-P securities except as provided in the SPA. Id. at 71. As a matter of equity, however, the arbitrator recognized that Chishti had, for many years, sold and pledged his TRG-P shares with TRG-I's knowledge and assistance; the arbitrator therefore created a "carve out" period for TRG-P shares owned by Chishti that he purchased between October 4, 2005, and October 10, 2022, which, the arbitrator held, Chishti may "freely sell." See id. at 59-60, 71.

3

The arbitrator also addressed the parties' arguments with regard to certain shares of TRG-I and/or TRG-P that are or may in future be owned by Chishti's wife, Pobereskin. See Final Award at 58 n.21. The arbitrator concluded that, under New York law, Chishti beneficially owns the shares of TRG-P that Pobereskin held as of the date of the Final Award. Id. However, the arbitrator agreed with Chishti that there was no basis for the arbitrator to exercise arbitral jurisdiction over Pobereskin or her property. See id.

Finally, the arbitrator granted TRG-I's request for reasonable attorneys' fees and costs, awarding TRG-I just over $9 million. Id. at 70. The arbitrator noted that TRG-I had requested more than $11.3 million in fees and costs, but he discounted that amount based on his assessment of factors including, but not limited to, Chishti's presentation of facts possessing sufficient probative value to warrant establishing the "carve out" period, TRG-I's failure to obtain relief with respect to Pobereskin, and TRG-I's request for reimbursement of fees charged by an expert on whom it did not rely. See id. at 61, 68-69. The arbitrator rejected Chishti's argument that the so-called "lodestar" methodology for assessing the reasonableness of attorneys' fees should apply, observing that the Second Circuit abandoned that methodology more than fifteen years ago. Id. at 63-64.

II. Applicable Law

The parties proceed as if New York law, rather than the Federal Arbitration Act ("FAA"), governs this Court's review of their petitions. See ECF No. 3 at 2; ECF No. 26 at 1, 8-9. TRG-I points to

4

the Second Circuit's resolution of a previous dispute between the parties relating to the same arbitration agreement at issue in this action. In Resource Group International Limited v. Chishti, 91 F.4th 107, 111-12 (2d Cir. 2024), the Second Circuit held that "the parties opted out of the FAA and expressly elected New York state law to govern any arbitration procedures and awards between them." See also Stagl v. Delta Airlines, Inc., 52 F.3d 463, 467 (2d Cir. 1995) ("Because both parties agree that New York cases are controlling, we shall assume that New York law governs this diversity action."). As in Stagl, the Court thus assumes, without definitively deciding, that New York law governs here.[2]

Section 7510 of the New York Civil Practice Law and Rules ("CPLR") requires that a court must confirm an arbitration award upon a party's timely application unless one or more of four closely circumscribed grounds applies. See CPLR 7510; see also ECF No. 3 at 6-8. Those grounds are: "(i) corruption, fraud or misconduct in procuring the award"; "(ii) partiality of an arbitrator appointed as a neutral"; "(iii) an arbitrator . . . exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made"; or "(iv) failure to follow the procedure of

---

[2] In any event, the choice of law does not really matter here. "There is little practical difference between the standards applied by the CPLR and the FAA to the question of whether an arbitral award should be vacated. Under either standard, judicial review of arbitration awards is deferential, limited and narrowly circumscribed." DeVary v. Nat'l Secs. Corp., No. 21 Civ. 7869, 2024 WL 4444280, at *3-4 (S.D.N.Y. Oct. 8, 2024) (cleaned up).

this article." CPLR 7511(b)(1); see also ECF No. 26 at 18-19. Here, the only claim for vacating the award is under the third prong.

Specifically, one way an arbitrator may exceed or imperfectly execute his power, in violation of CPLR 7511(b)(1)(iii), is by manifestly disregarding the substantive law applicable to the parties' dispute, see ECF No. 26 at 19, and this is the claim here. Manifest disregard of law is, however, a "severely limited doctrine," indeed a "doctrine of last resort limited to the rare occurrences of apparent egregious impropriety on the part of the arbitrator." In re Buffalo Tchrs.' Fed'n & Bd. of Educ. of Buffalo City Sch. Dist., 227 A.D.3d 1435, 1436-37 (4th Dep't 2024); see also ECF No. 31 at 3-4. As the Second Circuit has explained, to vacate an arbitration award based on manifest disregard of law requires a party to prove that both "(1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 111 (2d Cir. 2006).

III. Application

Here, even though Chishti argues that the arbitrator exceeded his power and manifestly disregarded the law, see ECF No. 26 at 1, he fails to set forth any valid basis for vacating any part of the arbitrator's detailed, lengthy, and carefully reasoned award. Instead, as shown below, Chishti's cross-petition largely seeks to relitigate the merits of the arbitrator's decision -- precisely what the law prohibits. Because none of Chishti's arguments shows that the

6

arbitrator acted with "apparent egregious impropriety," see Buffalo Tchrs.' Fed'n, 227 A.D. 3d at 1436, or that any other ground for vacatur applies, his cross-petition fails.

A. Interpretation of the Restrictions on Transfer

Chishti primarily argues that the arbitrator manifestly disregarded "black letter New York law" in construing Section 8.6(a)(iv) of the SPA to prohibit him from selling certain shares that he acquired after the date of the SPA. See ECF No. 26 at 5-7, 17, 20-22. The arbitrator rejected Chishti's interpretation of the disputed provision, concluding that subsection (a)(iv) served only as a "confirmation" or "further assurance" of Section 8.6(a)'s general restriction on transfer and the narrow exceptions to that restriction contained in subsections (a)(i) to (a)(iii). See Final Award at 23-28. Chishti contends that the Final Award renders Section 8.6(a)(iv) meaningless and thereby disregards the rule of New York law that a contract must be interpreted to avoid rendering any provision "actually or 'effectively' meaningless." ECF No. 26 at 21.

To be sure, Chishti's argument about the construction of Section 8.6(a)(iv) is one possibility among the alternative constructions the arbitrator considered. The language Chishti cites -- providing that "there shall be no restriction on . . . the sale by Mr. Chishti of [TRG-P shares] he acquires after the date hereof" -- can be interpreted to suggest that Chishti may freely transfer or otherwise dispose of such shares. See ECF No. 26 at 6. But this Court's role in reviewing TRG-I's petition and Chishti's cross-petition is not to substitute its

7

interpretation of the SPA for that of the arbitrator. See, e.g., Kowaleski & N.Y. State Dep't of Corr. Servs., 16 N.Y.3d 85, 91 ("Outside of these narrowly circumscribed exceptions [in CPLR 7511], courts lack authority to review arbitral decisions, even where an arbitrator has made an error of law or fact" (cleaned up)); ECF No. 31 at 1-2. Thus, the question before the Court is whether Chishti has shown that any of the grounds for vacating the arbitrator's award applies.

The arbitrator here engaged in a careful analysis of the relevant provisions of the SPA. The Final Award identifies those provisions, describes in detail the basic principles of contract interpretation under New York law, and outlines the parties' respective positions about the meaning of Section 8.6(a). See Final Award at 9-17. Chishti identifies no error -- let alone any "egregious impropriety," Buffalo Tchrs.' Fed'n, 227 A.D. 3d at 1436 -- in this portion of the Final Award. He instead challenges the arbitrator's application of these legal principles. See ECF No. 26 at 20-22. But while Chishti presses his own possible interpretation of Section 8.6(a)(iv), he fails to acknowledge the reasonableness of the alternative interpretation raised by TRG-I and accepted by the arbitrator. See id. The arbitrator, after examining the text, structure, and purpose of Section 8.6(a)(iv), concluded that Section 8.6(a) imposed a general restriction on Chishti's ability to transfer shares, that subsection (a)(i) through (a)(iii) created narrow exceptions to that general restriction, and that subsection (a)(iv) acted as a "confirmation" or "further

8

assurance" of the parties' agreement. See Final Award at 20, 28. In reaching these conclusions, the arbitrator specifically considered and rejected the contention, advanced by Chishti, that TRG-I's reading would render Section 8.6(a)(iv) meaningless. See id. at 22-23.

Moreover, the arbitrator explained that even if he had found Chishti's interpretation of Section 8.6(a)(iv) to be reasonable as a matter of New York law, "thus requiring a resort to extrinsic evidence" to decide between the parties' competing reasonable interpretations, "the relevant extrinsic evidence also supports [TRG-I's] proffered interpretation." Id. at 28-54 (examining extrinsic evidence in detail); see also ECF No. 31 at 7-8. Chishti identifies no ground for vacating this "second independent basis," Final Award at 29, for the arbitrator's decision about the meaning of Section 8.6(a)(iv).

At bottom, the Court concludes that the arbitrator's analysis of the SPA was reasonable and thorough, and Chishti has identified no basis for his assertion that the arbitrator manifestly disregarded the law.

B.  Beneficial Ownership of Pobereskin's Shares

Next, Chishti contends that the arbitrator "manifestly disregarded the law and exceeded its authority" by concluding that the shares of TRG-P that are currently owned by Pobereskin are beneficially owned by Chishti. See ECF No. 26 at 7-9; see also id. at 17-18, 22-24.

Citing four different pieces of evidence, the arbitrator reasoned that those facts "establish 'beneficial ownership' as a matter of New York law, irrespective of the Parties' marital relationship and/or

9

their pre/post nuptial agreements." Final Award at 58 n.21. The arbitrator then added an important caveat: "Nevertheless, Ms. Pobereskin is not a party to the SPA or this proceeding, and . . . no basis for arbitral jurisdiction over Ms. Pobereskin (or her property) has been demonstrated to exist. Accordingly, the Tribunal is without authority to grant any relief against Ms. Pobereskin in law or equity as part of this proceeding." Id.

Chishti argues that the arbitrator exceeded his jurisdictional authority and demonstrated "disregard for . . . Pobereskin's personal autonomy and financial interests." ECF No. 26 at 23. This argument plainly misrepresents the arbitrator's conclusion. As just explained, the arbitrator specifically acknowledged that there was "no basis for arbitral jurisdiction over Ms. Pobereskin (or her property)." Final Award at 58 n.21. Indeed, while the arbitrator suggested that TRG-I "might have a plausible cause of action against Ms. Pobereskin under New York law in relation to [Chishti's] 'beneficial ownership' of certain TRG-I or TRG-P shares," TRG-I "must pursue any such cause of action and/or requested relief against Ms. Pobereskin (or her property) in a different forum." Id. Therefore, contrary to Chishti's suggestion that the arbitrator ignored the limits on his authority, the Final Award reflects the arbitrator's correct understanding that, while he lacked jurisdiction to settle the disposition of Pobereskin's shares, he did not lack jurisdiction to rule on Chishti's beneficial ownership of them. Cf. In re Grasso, 72 A.D.3d 1463, 1466 (3d Dep't 2010)

(holding that arbitrator did not exceed authority in reaching finding regarding respondent's ownership of disputed stock).

Moreover, Chishti offers no basis for his argument that the arbitrator's determination that Chishti (as opposed to Pobereskin) beneficially owned the TRG-P shares at issue was outside the arbitrator's jurisdiction. See ECF No. 26 at 22-24. Indeed, determining what shares Chishti owned (and thus could not transfer) was central to the dispute that the parties presented to the arbitrator. See ECF No. 31 at 11-12. As the arbitrator noted, any questions about whether the arbitrator's award is binding on Pobereskin and whether another court may enforce the arbitrator's findings concerning Chishti's beneficial ownership of Pobereskin's shares are appropriately left for another court that is actually presented with them. See Final Award at 58 n.21.

Accordingly, the Court concludes that the arbitrator did not "exceed[] his power," CPLR 7511(b)(1)(iii), by concluding that Chishti beneficially owned his wife's shares.

C.  Award of Attorneys' Fees and Costs

Finally, Chishti argues that the arbitrator's award of more than $9 million in attorneys' fees and costs constituted a manifest disregard of law because the arbitrator did not use the so-called "lodestar methodology." See ECF No. 35.[3] According to Chishti, the

---

[3] In passing, Chishti additionally argues that the arbitrator's fee award "makes clear his evident partiality" and violates New York public policy against excessive fees. See id. at 5. Chishti offers no legal authority for the former proposition. The case that he cites for the

11

resulting fee award was therefore not reasonable, in violation of the parties' arbitration agreement. See id. at 5.

As with Chishti's other arguments, he fails to demonstrate that the arbitrator manifestly disregarded the law. Chishti cites no authority for the proposition that a New York court is required to apply the lodestar method when awarding attorneys' fees. See id. at 3. And although Chishti acknowledges the caselaw that the arbitrator cited in support of a totality-of-the-circumstances reasonableness inquiry, he fails to engage meaningfully with it. See id. Chiefly, in Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany & Albany County Board of Elections, 522 F.3d 182, 190 (2d Cir. 2008), the Second Circuit pointedly observed that "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." The Second Circuit directed district courts to "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Id. The arbitrator here did just that. He considered, at length, various factors that the Second Circuit identified in Arbor Hill, discounted the amount of TRG-I's request after concluding that certain considerations favored Chishti, and ultimately entered an award that

---

latter proposition is inapposite because Chishti could not reasonably contend that the fee award -- which did not exceed Chishti's own attorneys' fees, see Final Award at 65 -- was "out of all proportion to the value of the professional services rendered." See D&W Cent. Sta. Fire Alarm Co., Inc. v. FlatironHotel Operations, LLC, 221 A.D.3d 1003, 1006 (2d Dep't 2023).

"reflects an equitable blending of the additional relevant considerations." Final Award at 69-70; see also id. at 64-70 (setting forth detailed analysis).

Even if Chishti were correct that the arbitrator should have applied the lodestar method as a first step in calculating the fee award, Chishti would still fail to demonstrate that the arbitrator "ignored" the lodestar method "altogether." See D.H. Blair & Co., 462 F.3d at 111. Instead, the arbitrator devoted several pages of the Final Award to explaining why, in the arbitrator's view, the law in this Circuit requires consideration of the factors set forth in Arbor Hill. See Final Award at 62-64. Therefore, the Court concludes that the arbitrator did not manifestly disregard the law as to the award of attorneys' fees and costs.

* * *

For the foregoing reasons, Chishti has manifestly failed to demonstrate that any of the grounds for vacating or modifying Final Award is applicable here. The Court therefore grants TRG-I's petition to confirm the Final Award; denies Chishti's cross-petition to the extent that it seeks vacatur of the Final Award; and grants Chishti's cross-petition to the extent that it seeks partial confirmation of the Final Award.

The Clerk of Court is respectfully directed to terminate the petitions at ECF Nos. 1 and 25 and to close this case.

SO ORDERED.

New York, NY
June 18, 2025

JED S. RAKOFF, U.S.D.J.