UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE RESOURCE GROUP INTERNATIONAL LIMITED,<br><br>Petitioner,<br><br>v.<br><br>MUHAMMAD ZIAULLAH KHAN CHISHTI,<br><br>Respondent. | 25-cv-1021 (JSR)<br><br>Opinion |

JED S. RAKOFF, U.S.D.J.

On July 22, 2026, this Court issued a "bottom-line" Order denying the motion of third-party Sarah Pobereskin seeking leave to appeal the Court's June 22 Judgment without having to post a supersedeas bond. See ECF No. 185. This Opinion sets forth the reasons for that Order.

## I. Background

In April 2025, Petitioner The Resource Group International Limited ("TRG-I") obtained an arbitration award against Respondent Muhammad Ziaullah Khan Chishti. This Court confirmed that arbitration award shortly thereafter. See ECF Nos. 40-41. As of

January 2026, the remaining monetary component of that judgment was $8,448,629.11.[1] See ECF No. 170, at 3.

In January 2026, in an effort to collect the remaining monetary component of the award, TRG-I moved under Fed. R. Civ. P. 69 and New York CPLR § 5225 "for turnover of shares of TRG Pakistan Limited ("TRG-P") and Isbei Limited ("Isbei") held in Pobereskin's name." ECF No. 170, at 3. The Court held a bench trial on the motion from May 26 through May 29. The Court issued its findings of fact and conclusions of law on June 18. See id. The Court assumes the parties' familiarity with the findings and conclusions therein.

As relevant here, the Court ultimately "order[ed] Pobereskin to turn over to TRG-I . . . a sum no greater than the amount of the judgment TRG-I holds against Chishti and also no greater than $9,828,582.17." Id. at 62. The Court specified further that "Pobereskin may satisfy this obligation by turning over to TRG-I either so much of the ownership interest in the securities of TRG-P and/or Isbei that she holds, cash, or a combination" of the

[1] The monetary component of the judgment was initially $9,055,364.91. See ECF No. 170, at 3. In January 2026, TRG-I filed a Notice of Partial Satisfaction of Judgment, which stated that $800,000 of the judgment had been satisfied. Id.; see ECF No. 123. The total outstanding judgment against Chishti, at the time TRG-I filed its motion against Pobereskin, was $8,448,629.11. ECF No. 170, at 3.

securities and cash. Id. The Court issued judgment on June 22, 2026. See ECF No. 171.

On July 8, Pobereskin moved pursuant to Fed. R. Civ. P. 62 for a stay of enforcement pending appeal of the Court's June 22 Judgment, without having to post a supersedeas bond in the amount of the judgment. See ECF. No. 172. The motion was fully briefed on July 21, 2026. On July 22, the Court issued a "bottom-line" Order denying Pobereskin's motion. See ECF No. 185. The Opinion that follows explains that Order.

## II. Analysis

Pursuant to Fed. R. Civ. P. 62(f), "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." The Second Circuit has explained that, under Rule 62(f), "in order to avoid posting a supersedeas bond a judgment debtor must demonstrate not only (1) that state law entitles it to appeal without a bond and (2) that a judgment can be made a lien against a judgment debtor's property under the state's lien law, but also (3) that the circumstances are such that the judgment creditor can readily establish a lien that will be adequate to secure the judgment."[2] F.D.I.C. v. Ann-High Assocs., No. 97-6095,

[2] Except where otherwise indicated, all quotations in this Opinion omit citations, quotation marks, footnotes, brackets,

1997 WL 1877195, at *4 (2d Cir. Dec. 2, 1997).[3] Pobereskin's motion fails at the first step.

Pobereskin relies on CPLR 5519 to establish her entitlement under state law to appeal without posting a supersedeas bond. This provision of New York law provides for a stay pending appeal, without posting bond, where "the judgment or order [appealed from] directs the assignment or delivery of personal property."[4] Pobereskin's position is that this Court's June 22 Judgment, from which she now appeals, was a judgment directing assignment of personal property and not a money judgment. The Court disagrees.

ellipses, and other non-substantive alterations in source material.

[3] Although this is an unreported case, courts have since observed that "it is clear from the Second Circuit's ruling that it was intended to be a precedential per curiam opinion rather than a non-precedential summary order." Butler v. Ross, No. 16CV1282 (DLC), 2017 WL 6210843, *3 n.3 (S.D.N.Y. Dec. 7, 2017). Indeed, the Second Circuit has cited Ann-High Associates as good law in precedential cases. See In re Nassau Cnty. Strip Search Cases, 783 F.3d 414, 417 (2d Cir. 2015).

[4] CPLR § 5519 goes on to specify that the personal property subject to the judgment appealed from must be "placed in the custody of an officer designated by the court of original instance to abide the direction of the court to which the appeal is taken, or an undertaking in a sum fixed by the court of original instance [must be] given that the appellant or moving party will obey the direction of the court to which the appeal is taken." These further requirements are not germane to the Court's analysis, since the Court concludes that § 5519 is inapplicable.

The Court's June 22 Judgment directed "Pobereskin to turn over to TRG-I, within thirty days of the entry of judgment, a sum no greater than the amount of the judgment TRG-I holds against Chishti and also no greater than $9,828,582.17." ECF No. 171, at 1. The Court further "order[ed] that Pobereskin may satisfy this obligation by turning over to TRG-I either so much of the ownership interest in the securities of TRG-P and/or Isbei that she holds, cash, or a combination of TRG-P and/or Isbei securities and cash." Id. at 1-2. In other words, the Court entered money judgment against Pobereskin and specified that she was permitted to satisfy the judgment, in whole or in part, with certain shares in TRG-P or Isbei.

Despite the plain meaning of the June 22 Judgment, Pobereskin argues that this Court could not have ordered a money judgment, since New York law did not permit it to do so. This, too, is unavailing.

CPLR § 5225(b), which was the vehicle with which TRG-I sought relief in this case, allows a judgment creditor to commence proceedings "against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor." The essence of Pobereskin's argument is that § 5225(b) authorizes relief as to specific property, but it does not typically

entitle judgment creditors to a general money judgment against a transferee.[5]

The Court discerns no such limitation in the relief authorized by § 5225(b).[6] To the contrary, a special proceeding under § 5225(b) "culminates in a judgment . . . and the judgment runs directly against the respondent and may then be enforced against the respondent like a judgment rendered in a plenary money action." Richard C. Reilly, Practice Commentaries, CPLR § 5225(b). Indeed, the New York Court of Appeals has explained that a proceeding under § 5225(b) is "against the garnishee" and not "a device operating on the property alone." Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533, 538 (2009); see also id. ("In

---

[5] The sole exception to this rule, Pobereskin argues, is "where the transferee has made it impossible to return the property to the creditor by, for example, disposing of wrongfully conveyed property or depreciating it." ECF No. 172, at 4; see Fed. Deposit Ins. Corp. v. Heilbrun, 167 AD2d 294, 294 (1st Dept 1990).

[6] The full relevant portion of CPLR § 5225(b) provides:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

short, article 52 postjudgment enforcement involves a proceeding against a person—its purpose is to demand that a person convert property to money for payment to a creditor . . . ."). Accordingly, "[h]aving acquired jurisdiction of the [transferee], the court can compel observance of its decrees by proceedings in personam against the owner within the jurisdiction." Id.

To the extent New York courts have suggested any limitations on the remedies available under § 5225(b), they have principally been concerned with ensuring that "the defaulted creditor" does not receive "an enhancement of position beyond what it was before the fraud." Marine Midland Bank v. Murkoff, 120 A.D.2d 122, 133 (2d Dep't 1986). Put simply, "[t]he creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." Id.

The Court's Judgment in this case is consistent with that construction. The Court found that Chishti fraudulently conveyed cash, not shares in Isbei and TRG-P. See ECF 170, at 9-18, 61-62. Put another way, the "property that would have been available to satisfy the judgment had there been no conveyance," Marine Midland, 120 A.D.2d at 133, was cash. Thus, the Court acted well within its statutory authority under § 5225(b) when it ordered Pobereskin to satisfy a money judgment.

If there were any doubt as to this conclusion, CPLR § 5240 — on which the Court expressly relied in issuing judgment — permits a court to, "at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." The official Legislative Report provides that this "section is stated as broadly as possible and is designed to replace the diverse, overlapping, overly technical and inconsistent provisions relating to the manner in which enforcement procedures may be modified, vacated and regulated." Legis. Stud. and Rep., CPLR 5240. Accordingly, even if Pobereskin is correct that § 5225 is typically a vehicle for enforcing a judgment against specific personal property, § 5240 plainly provides the Court with flexible authority to modify this enforcement procedure on its own initiative.[7]

---

[7] The Court also notes that the New York Debtor and Creditor Law authorizes broad relief to enable a creditor to recover the amount that was fraudulently transferred by the debtor to the transferee. See N.Y. Debt. & Cred. Law § 276. Courts in this circuit have exercised this authority to order money judgment against a transferee where the creditor brought a motion under § 5225(b). See Integrity Elecs., Inc. v. Garden State Distributors, Inc., No. 14 CIV. 3197 BMC, 2016 WL 3637004, at *10-11 (E.D.N.Y. June 30, 2016); see also Mitchell v. Lyons Pro. Servs., Inc., 109 F. Supp. 3d 555, 568-69 (E.D.N.Y. 2015), aff'd sub nom. Mitchell v. Garrison Protective Servs., Inc., 819 F.3d 636 (2d Cir. 2016) ("If there is one area of the law that has little regard for form over substance, it is fraudulent conveyance law, for parties and their lawyers frequently

**IV. Conclusion**

In sum, the Court had the authority to — and, in fact, did — issue a money judgment against Pobereskin. Thus, Pobereskin has not established that state law — here, CPLR § 5519 — "entitles [her] to appeal without a bond." F.D.I.C., 1997 WL 1877195, at *4. The Court therefore denied her request for a stay of appeal without posting supersedeas bond.

New York, NY
September 8, 2026

JED S. RAKOFF, U.S.D.J.

demonstrate ingenuity in attempting to camouflage the economic reality of transactions with distressed companies.").